## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **MAGGIE REYNOLDS**, )<br>c/o Cornerstone Law Firm )<br>8350 N. St. Clair Ave., #225 )<br>Kansas City, MO 64151 )<br> )<br>        Plaintiff, )<br> )<br>v. )<br> )<br> )<br>**THE WILLOW DOMESTIC VIOLENCE** )<br>**CENTER, INC.**, )<br>*Registered Agent:* )<br>SANDRA ANN EIGES )<br>Sunflower Rd. P.O. Box 633 )<br>Lawrence, KS 66044 )<br> )<br>        Defendant. ) | Case No. _____ |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Maggie Reynolds, by and through her attorney, and for her cause of action against Defendant The Willow Domestic Violence Center, Inc., states and alleges as follows:

### Parties and Jurisdiction

1. This is an employment case based upon the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the Kansas Minimum Wage and Maximum Hours Law, K.S.A. 44-1201 *et seq.* ("KMWMHL"), and Kansas common law.

2. Plaintiff Maggie Reynolds (hereinafter "Plaintiff") is a citizen of the United States and of Kansas, domiciled in Lawrence, Douglas County, Kansas.

3. Defendant The Willow Domestic Violence Center, Inc. (hereinafter "The Willow") is and was at all relevant times a Kansas not-for-profit corporation registered and in good

standing in the State of Kansas with its principle place of business located at 1920 Moodie Rd., Lawrence, Kansas 66046.

4. At all relevant times, The Willow has been an "employer" engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

5. At all relevant times, The Willow has been an "employer" engaged in interstate "commerce" within the meaning of the FLSA.

6. At all relevant times, The Willow has had employees engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

7. At all relevant times, The Willow's annual gross volume of sales made or business done was not less than $500,000.00.

8. At all relevant times, The Willow has been an "enterprise engaged in commerce" within the meaning of the FLSA.

9. At all relevant times, The Willow has employed "employee[s]," including Plaintiff.

10. At all relevant times, Plaintiffs and The Willow's other employees were engaged in commerce and/or worked for The Willow which is an enterprise engaged in commerce.

11. The Willow is an employer within the meaning of the FLSA.

12. To the extent The Willow is not an employer within the meaning of the FLSA, it is an employer within the meaning of the KMWMHL.

13. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

14. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the state of Kansas pursuant to 28 U.S.C. § 1367(a), as such claims are so related to Plaintiff's claims arising under the laws of the United States that Plaintiff's claims form part of the same case or controversy.

15. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b) as The Willow's principle place of business is located within this District, and it therefore resides within this District, and as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

**<u>Additional Factual Allegations</u>**

16. Plaintiff was employed by The Willow as Program Coordinator at its Ottawa, Franklin County, Kansas, facility until she was terminated on April 18, 2019.

17. At all relevant times, Plaintiff was not paid a predetermined amount of compensation each pay period.

18. At all relevant times, Plaintiff was not paid on a salary basis.

19. At all relevant times, Plaintiff's primary duties did not include interviewing, selecting, and training of employees.

20. At all relevant times, Plaintiff's primary duties did not include setting and adjusting employees' rates of pay and hours of work.

21. At all relevant times, Plaintiff's primary duties did not include directing the work of two or more other full-time employees or their equivalent.

22. At all relevant times, Plaintiff's primary duties did not include maintaining production or sales records for use in supervision or control.

23. At all relevant times, Plaintiff's primary duties did not include appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status.

24. At all relevant times, Plaintiff's primary duties did not include handling employee complaints and grievances.

25. At all relevant times, Plaintiff's primary duties did not include disciplining employees.

26. At all relevant times, Plaintiff's primary duties did not include apportioning the work among the employees.

27. At all relevant times, Plaintiff's primary duties did not include determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold.

28. At all relevant times, Plaintiff's primary duties did not include controlling the flow and distribution of materials or merchandise and supplies.

29. At all relevant times, Plaintiff's primary duties did not include providing for the safety and security of the employees or the property.

30. At all relevant times, Plaintiff's primary duties did not include planning and controlling the budget.

31. At all relevant times, Plaintiff's primary duties did not include monitoring or implementing legal compliance measures.

32. At all relevant times, Plaintiff was not employed as a bona fide executive employee as contemplated by the FLSA.

33. At all relevant times, Plaintiff did not have the authority to formulate, affect, interpret, or implement management policies or operating practices.

34. At all relevant times, Plaintiff did not carry out major assignments in conducting the operations of the business.

35. At all relevant times, Plaintiff did not have authority to commit The Willow in matters that had significant financial impact.

36. At all relevant times, Plaintiff did not have authority to waive or deviate from established policies and procedures without prior approval.

37. At all relevant times, Plaintiff's primary duties did not include work directly related to assisting with the running or servicing of the business.

38. At all relevant times, Plaintiff's primary duties did not include the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

39. At all relevant times, Plaintiff's primary duties did not include disciplining employees.

40. At all relevant times, Plaintiff's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

41. At all relevant times, Plaintiff was not employed as a bona fide administrative employee as contemplated by the FLSA.

42. At all relevant times, Plaintiff's primary duties did not include the performance of work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment.

43. At all relevant times, Plaintiff's primary duties did not require advanced knowledge in a field of science or learning.

44. At all relevant times, Plaintiff's primary duties did not require advanced knowledge customarily acquired by a prolonged course of specialized intellectual instruction.

45. At all relevant times, Plaintiff's primary duties did not include the performance of work requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

46. At all relevant times, Plaintiff was not employed as a bona fide professional employee as contemplated by the FLSA.

47. At all relevant times, Plaintiff's primary duties did not require her to be customarily and regularly engaged away from The Willow's place or places of business.

48. At all relevant times, Plaintiff's primary duties did not include the making of sales, exchanges, contracts to sell, consignments for sales, shipments for sale, or other dispositions.

49. At all relevant times, Plaintiff's primary duties did not include making sales.

50. At all relevant times, Plaintiff's primary duties did not include obtaining orders or contracts for services or for the use of facilities for which a consideration would be paid by The Willow's clients or customers.

51. At all relevant times, Plaintiff was not employed as an outside sales employee as contemplated by the FLSA.

52. Beginning in January 2019, Plaintiff's supervisor told Plaintiff and the other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility that they were no longer permitted to work more than forty (40) hours per week.

53. Due to the nature of their position, neither Plaintiff nor the other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility could complete their work on a timely basis if they only worked forty (40) or fewer hours per week.

54. Throughout Plaintiff's employment with The Willow, she and the other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility worked between sixty (60) and eighty (80) hours per week.

55. After Plaintiff was told to stop working overtime, it was necessary for Plaintiff to to continue working between sixty (60) and eighty (80) hours per week to provide quality services to her clients.

56. In mid-February 2019, instead of paying Plaintiff for the time she had worked in excess of forty (40) hours per week up to that point, Plaintiff's supervisor instructed Plaintiff to immediately begin taking eighty (80) hours of "flex time"; in other words, Plaintiff was instructed to not come to work for her regularly scheduled forty (40) hours per week for the following two weeks, but that she would still be paid for that time.

57. After she was instructed to take off the following two weeks in mid-February 2019 as "flex time", Plaintiff insisted that taking so much time off at one time would be a disservice to her clients, and instead agreed to use "flex time" to take off on Tuesdays and Thursdays until all of the hours over forty (40) per week that she had worked but for which she had not been paid had been accounted for.

58. Plaintiff regularly sent communications to her supervisor indicating that the workload was too heavy and that they needed another Program Coordinator in the Ottawa, Franklin County, Kansas, facility.

59. Because Plaintiff's workload was too heavy, to be able to continue adequate services for The Willow and her clients, it was necessary for Plaintiff to work from home or from the office on Tuesdays and Thursdays on which she was supposed to be using "flex time".

60. Because Plaintiff's workload was too heavy, Plaintiff worked from home or from the office on Tuesdays and Thursdays on which she was supposed to be using "flex time".

61. Plaintiff's supervisor was aware that Plaintiff was working from home or from the office on Tuesdays and Thursdays on which Plaintiff was supposed to be using "flex time".

62. Sometime prior to the termination of her employment, Plaintiff sent a communication to her supervisor expressly indicating that she was no longer going to accurately complete her timecards to reflect all the hours she was working because she felt like she was being reprimanded for being honest.

63. On April 18, 2019, shortly after Plaintiff expressed to her supervisor that she was no longer going to continue accurately record her time, The Willow terminated Plaintiff's employment.

64. Plaintiff was told that she was being terminated for having a negative attitude and for turning in paperwork late.

65. Plaintiff's only negative statements about her work addressed the heavy workload and the fact that she was not being paid for the time she was working.

66. The other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility had also turned in paperwork late at the same time as Plaintiff.

67. The other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility had also turned in paperwork late at the same time as Plaintiff but was not terminated.

68. The other Program Coordinator that worked in the Ottawa, Franklin County, Kansas, facility had not made statements to The Willow that constituted good faith complaints

that they were required to work more than forty (40) hours per week but were not being paid for it.

## COUNT I
### Violation under 29 U.S.C. § 201 *et seq.*
### Failure to Pay Overtime Wages

69. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

70. At all relevant times, The Willow was engaged in interstate commerce.

71. At all relevant times, The Willow was an "employer" within the meaning of the FLSA.

72. At all relevant times, Plaintiff was engaged in trade, commerce, transportation, transmission, or communication among several States.

73. At all relevant times, The Willow employed Plaintiff within the meaning of the FLSA.

74. Due to the nature of her job with The Willow, Plaintiff was entitled to payment for wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty (40) hours per work week.

75. As part of her job with The Willow, Plaintiff was regularly required to work in excess of forty (40) hours per work week.

76. The Willow failed to pay Plaintiff wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty (40) hours per work week between January 2019 and the termination of her employment.

77. The Willow's failure to pay Plaintiff overtime pay was willful and not done in good faith.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against The Willow for economic damages, including back-pay; for liquidated damages; for reasonable

attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

<u>COUNT II</u>
**Violation under 29 U.S.C. § 201** *et seq.*
**Retaliation**

78. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all paragraphs above as though set out fully herein.

79. Plaintiff made a good faith complaint to The Willow that it was in violation of the FLSA's overtime pay requirements.

80. The Willow terminated Plaintiff's employment.

81. Plaintiff's good faith complaint of The Willow's unlawful conduct was a determining factor in The Willow's decision to terminate her.

82. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of The Willow and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by The Willow, thus making The Willow liable for said actions under the doctrine of *respondent superior*.

83. The Willow failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for making good faith complaints of an employer's failure to comply with overtime laws.

84. The Willow failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the labor laws, including the FLSA.

85. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of The Willow based on her report of illegal labor practices in violation of the FLSA.

86. As a direct and proximate result of The Willow's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

87. As a further direct and proximate result of The Willow's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

88. By failing to take prompt and effective remedial action, The Willow in effect condoned, ratified, and/or authorized discrimination against the Plaintiff.

89. As shown by the foregoing, The Willow's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish The Willow or to deter it and other employers from like conduct in the future.

90. Plaintiff is entitled to recover reasonable attorney's fees from The Willow pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against The Willow for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for liquidated damages; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

### COUNT III
**Violation of K.S.A. §§ 44-1201 *et seq*.**
**Failure to Pay Overtime Wages**
**(Pled in the Alternative to Count I)**

91. To the extent Plaintiff's above allegations are applicable to claims made pursuant to the KMWMHL, and to the extent Plaintiff is not entitled to overtime pay pursuant to the FLSA, Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-62 above as though set out fully herein.

92. At all relevant times, The Willow were "employers" within the meaning of the KMWMHL.

93. At all relevant times, The Willow employed Plaintiff within the meaning of the KMWMHL.

94. Due to the nature of Plaintiff's job with The Willow, Plaintiff was entitled to payment for wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty-six (46) hours per work week.

95. As part of her job with The Willow, Plaintiff was regularly required to work in excess of forty-six (46) hours per work week.

96. The Willow failed to pay Plaintiff wages at a rate of pay of one and one-half times her regular rate of pay for all work performed in excess of forty-six (46) hours per work week.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against The Willow for economic damages, including back-pay; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT IV**
**Wrongful Termination in Violation of Kansas Public Policy**
**(Pled in the Alternative to Count II)**

97. To the extent Plaintiff's above allegations are applicable to claims made pursuant to Kansas common law, and to the extent Plaintiff is not entitled to a claim of retaliation pursuant to the FLSA, Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-62 above as though set out fully herein.

98. The Kansas Legislature has expressed a well-established and clear mandate of public policy that the state prohibits and makes unlawful the discharge of, or other discrimination against, an employee because such employee has made a complaint to her employer that she has not been paid wages in accordance with the KMWMHL. *See* K.S.A. 44-1210(b).

99. Plaintiff made a good faith complaint to The Willow that it was in violation of the KMWMHL's overtime pay requirements.

100. The Willow terminated Plaintiff's employment.

101. Plaintiff's good faith complaint of The Willow's unlawful conduct was a determining factor in The Willow's decision to terminate her.

102. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of The Willow and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by The Willow, thus making The Willow liable for said actions under the doctrine of *respondent superior*.

103. The Willow failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for making good faith complaints of an employer's failure to comply with overtime laws.

104.     The Willow failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the labor laws, including the KMWMHL.

105.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of The Willow based on her report of illegal labor practices in violation of the KMWMHL.

106.     As a direct and proximate result of The Willow's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

107.     As a further direct and proximate result of The Willow's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

108.     By failing to take prompt and effective remedial action, The Willow in effect condoned, ratified, and/or authorized discrimination against the Plaintiff.

109.     As shown by the foregoing, The Willow's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish The Willow or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against The Willow for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for punitive damages; for costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

<u>**COUNT V**</u>
**Violation of Kansas Common Law**
**Unjust Enrichment**

110.     Plaintiff re-alleges and incorporate by reference each and every allegation and averment set forth in this Complaint as though fully set forth herein.

111.     Plaintiff conferred a benefit on The Willow by working in excess of forty (40) hours per week between January 1, 2019, and the termination of her employment.

112.     The Willow appreciated the benefit conferred on it by Plaintiff when she worked in excess of forty (40) hours per week between January 1, 2019, and the termination of her employment.

113.     The Willow did not pay Plaintiff her anticipated wages for work performed in excess of forty (40) hours per week between January 1, 2019, and the termination of her employment.

114.     The Willow's failure to Plaintiff after appreciated the benefit conferred on it by their work performed in excess of forty (40) hours per week between January 1, 2019, and the termination of her employment, is inequitable and unjust.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against The Willow; for an award of restitution in the value of anticipated but unpaid wages; for pre-judgment and post-judgment interest as provided by law; for costs and expenses of this action incurred herein; and for any and all such other and further legal or equitable relief as this Court deems necessary, just and proper.

**<u>Demand for Jury Trial and Designation of Place of Trial</u>**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

CORNERSTONE LAW FIRM

By: */s/ Joshua P. Wunderlich*
    Joshua P. Wunderlich      D. Kan 78506
    j.wunderlich@cornerstonefirm.com
    8350 N. St. Clair Ave., Ste. 225
    Kansas City, Missouri 64151
    Telephone        (816) 581-4040
    Facsimile        (816) 741-8889

    ATTORNEY FOR PLAINTIFF